**ERICA K. ZUNKEL**
California State Bar No. 229285
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: erica_zunkel@fd.org

Attorneys for Ana Chairez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE JOHN A. HOUSTON)**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 07CR3272-JAH |
| Plaintiff, | ) | |
| v. | ) | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| ANA CHAIREZ, | ) | |
| Defendant. | ) | |

**I.**

**STATEMENT OF FACTS**[1]

On November 8, 2007, at approximately 12:40 p.m., Ana Chairez entered the United States from Mexico at the Calexico West Port of Entry. Ms. Chairez was driving a 1995 Dodge Stratus. In secondary inspection, through the assistance of a narcotic detector dog, officers discovered 20.80 kilograms of marijuana concealed in the spare tire, passenger rear door, and rear seat. Ms. Chairez was arrested and detained at the Port of Entry. At approximately 4:27 p.m., Special Agent Thomas Behm advised Ms. Chairez of her <u>Miranda</u> rights in the English language. Ms. Chairez indicated to agents that she wished to speak in Spanish and at numerous points during the interrogation, evinced great difficulty understanding the agents in English. Ms. Chairez allegedly waived her rights. Three agents subsequently interrogated Ms. Chairez for

///

---

[1] Unless otherwise noted, the facts in this Statement of Facts are derived from government-produced discovery. Ms. Chairez does not concede the accuracy of these facts and reserves the right to contest these facts at future proceedings.

1  approximately an hour. Ms. Chairez contests this version of events. Ms. Chairez contends that she did not
2  understand her Miranda rights, as the advisals were done in the English language.
3      Ms. Chairez is currently charged by way of indictment with Importation of Marijuana in violation
4  of Title 21 U.S.C. §§ 952 and 960 and Possession of Marijuana with Intent to Distribute in violation of
5  Title 21 U.S.C. § 841(a)(1). The indictment in the instant case was returned by the July 2007 grand jury.
6  These motions follow.

## II.

## MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE

9   Ms. Chairez moves for the production by the government of the following discovery and for the
10  preservation of evidence. This request is not limited to those items about which the prosecutor knows, but
11  includes all discovery listed below that is in the custody, control, care, or knowledge of any government
12  agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032
13  (9th Cir. 1989).
14      1.   The Defendant's Statements. The government must disclose to Ms. Chairez *all* copies of any
15  written or recorded statements made by Ms. Chairez; the substance of any statements made by Ms. Chairez
16  that the government intends to offer in evidence at trial; any response by Ms. Chairez to interrogation; the
17  substance of any oral statements that the government intends to introduce at trial and any written summaries
18  of Ms. Chairez's oral statements contained in the handwritten notes of the government agent; any response
19  to any Miranda warnings that may have been given to Ms. Chairez; and any other statements by Ms. Chairez.
20  Fed. R. Crim. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16
21  make clear that the government must reveal *all* Ms. Chairez' statements, whether oral or written, regardless
22  of whether the government intends to make any use of those statements.
23      2.   Arrest Reports, Notes and Dispatch Tapes. Ms. Chairez also specifically requests that all
24  arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or
25  any questioning, if such reports have not already been produced *in their entirety*, be turned over to her. This
26  request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in
27  which statements of Ms. Chairez or any other discoverable material is contained. Ms. Chairez includes in this
28  request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case

1 agent or any other agent has written.  This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and (B) and
2 Brady v. Maryland, 373 U.S. 83 (1963).  See also Loux v. United States, 389 F.2d 911 (9th Cir. 1968).  Arrest
3 reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution
4 reports pertaining to Ms. Chairez are available under Fed. R. Crim. P. 16(a)(1)(A) and (B), Fed. R. Crim. P.
5 26.2 and 12(I).  Preservation of rough notes is requested, whether or not the government deems them
6 discoverable.

7        3.    Brady Material.  Ms. Chairez requests all documents, statements, agents' reports, and tangible
8 evidence favorable to her on the issue of guilt and/or that affects the credibility of the government's case.
9 Impeachment and exculpatory evidence both fall within Brady's definition of evidence favorable to the
10 accused.  United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

11        4.    Any Information That May Result in a Lower Sentence.  As discussed above, any information
12 that may result in a more favorable sentence must also be disclosed pursuant to Brady, 373 U.S. 83.  The
13 government must disclose any cooperation or attempted cooperation by Ms. Chairez, as well as any
14 information that could affect any base offense level or specific offense characteristic under Chapter Two of
15 the United States Sentencing Commission Guidelines Manual ("Guidelines").  Also included in this request
16 is any information relevant to a Chapter Three adjustment, a determination of Ms. Chairez's criminal history,
17 or any other application of the Guidelines.

18        5.    The Defendant's Prior Record.  Evidence of a prior record is available under Fed. R. Crim.
19 P. 16(a)(1)(D).  Ms. Chairez specifically requests a complete copy of any criminal record.

20        6.    Any Proposed 404(b) Evidence.  Evidence of prior similar acts is discoverable under
21 Fed. R. Crim. P. 16(a)(1)(D) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b),
22 "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the
23 general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial.
24 Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of
25 consequence may be inferred from the other acts evidence."  United States v. Mehrmanesh, 689 F.2d 822, 830
26 (9th Cir. 1982) (emphasis added; internal citations omitted); see also United States v. Brooke, 4 F.3d 1480,
27 1483 (9th Cir. 1993) (reaffirming Mehrmanesh and reversing convictions).
28 / / /

This includes any "TECS" records (records of prior border crossings) that the government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-1155 (9th Cir. 1999). Ms. Chairez requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7.  Evidence Seized. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E).

8.  Request for Preservation of Evidence. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, all narcotics, the results of any fingerprint analysis, the vehicle involved in the case, Ms. Chairez's personal effects, and any evidence seized from Ms. Chairez or any third party. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (e.g. undocumented aliens and transients).

It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9.  Henthorn Material. Ms. Chairez requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material. See Kyles v. Whitley, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended. Ms. Chairez further requests production of any such information at least

*one week* prior to the motion hearing and two weeks prior to trial. If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

      10.    <u>Tangible Objects</u>. Ms. Chairez requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Ms. Chairez. Fed. R. Crim. P. 16(a)(1)(E). Specifically, Ms. Chairez requests **color copies** of all photographs in the government's possession of the alleged narcotics and the vehicle in which the narcotics were found. If the prosecutor does not wish to make these copies, Ms. Chairez requests the opportunity to do so herself.

      11.    <u>Expert Witnesses</u>. Ms. Chairez requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s). <u>See</u> <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or speaks Spanish or any other foreign language that may have been used during the course of an interview with Ms. Chairez or any other witness.

Ms. Chairez requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. <u>See</u> <u>Kumho v. Carmichael Tire Co.</u>, 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

///

12. <u>Impeachment Evidence</u>. Ms. Chairez requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Ms. Chairez. <u>See</u> Fed. R. Evid. 608, 609 and 613. Such evidence is discoverable under <u>Brady</u>, 373 U.S. 83. <u>See</u> <u>United States v. Strifler</u>, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); <u>Thomas v. United States</u>, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13. <u>Evidence of Criminal Investigation of Any Government Witness</u>. Ms. Chairez requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. <u>United States v. Chitty</u>, 760 F.2d 425 (2d Cir. 1985).

14. <u>Evidence of Bias or Motive to Lie</u>. Ms. Chairez requests any evidence that any prospective government witness is biased or prejudiced against Ms. Chairez, or has a motive to falsify or distort his or his testimony. <u>Pennsylvania v. Ritchie</u>, 480 U.S. 39 (1987); <u>Strifler</u>, 851 F.2d 1197.

15. <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity</u>. Ms. Chairez requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. <u>Strifler</u>, 851 F.2d 1197; <u>Chavis v. North Carolina</u>, 637 F.2d 213, 224 (4th Cir. 1980).

16. <u>Witness Addresses</u>. Ms. Chairez requests the name and last known address of each prospective government witness. <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Chairez also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness. <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

17. <u>Name of Witnesses Favorable to the Defendant</u>. Ms. Chairez requests the name of any witness who made any arguably favorable statement concerning Ms. Chairez or who could not identify her or who was unsure of her identity or participation in the crime charged. <u>Jackson v. Wainwright</u>, 390 F.2d 288

/ / /

1 (5th Cir. 1968); Chavis, 637 F.2d at 223; Jones v. Jago, 575 F.2d 1164, 1168 (6th Cir. 1978); Hudson v. Blackburn, 601 F.2d 785 (5th Cir. 1979), cert. denied, 444 U.S. 1086 (1980).

18.    Statements Relevant to the Defense. Ms. Chairez requests disclosure of any statement that may be "relevant to any possible defense or contention" that she might assert. United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982). This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.

19.    Jencks Act Material. Ms. Chairez requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see also United States v. Boshell, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); see also United States v. Riley, 189 F.3d 802, 806-808 (9th Cir. 1999). Advance production will avoid the possibility of delay of the motion hearing or trial to allow Ms. Chairez to investigate the Jencks material. Ms. Chairez requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

20.    Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Ms. Chairez requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21.    Agreements Between the Government and Witnesses. Ms. Chairez requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. <u>Informants and Cooperating Witnesses</u>. Ms. Chairez requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Ms. Chairez. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. <u>Roviaro v. United States</u>, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Ms. Chairez.

23. <u>Bias by Informants or Cooperating Witnesses</u>. Ms. Chairez requests disclosure of any information indicating bias on the part of any informant or cooperating witness. <u>Giglio</u>, 405 U.S. 150. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. <u>Personnel Records of Government Officers Involved in the Arrest</u>. Ms. Chairez requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Chairez. <u>See</u> <u>Pitchess v. Superior Court</u>, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. <u>Training of Relevant Law Enforcement Officers</u>. Ms. Chairez requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding: (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses. Ms. Chairez also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover narcotics in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. <u>Performance Goals and Policy Awards</u>. Ms. Chairez requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband. This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

27. <u>Opportunity to Weigh, View and Photograph the Contraband</u>. Ms. Chairez hereby requests an opportunity to view, photograph, and weigh the contraband allegedly confiscated in this case. A proposed order is attached.

28. <u>DEA 7 Form</u>. Ms. Chairez requests a copy of the DEA-7 form that should indicate the alleged weight and purity of the contraband in this case.

29. <u>TECS Reports</u>. Ms. Chairez requests all TECS reports, including reports pertaining to all vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Ms. Chairez. **Any prior border crossings are considered "other acts" evidence that the government must produce before trial**. <u>Vega</u>, 188 F.3d at 1154. Ms. Chairez also requests all TECS reports related to her personal border crossings (in this car, on foot, or in another car).

30. <u>Reports of Scientific Tests or Examinations</u>. Pursuant to Fed. R. Crim. P. 16(a)(1)(F), Ms. Chairez requests the reports of all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

31. <u>Narcotics Detector Dog Information</u>. Ms. Chairez moves for production of all discoverable information about any Narcotics Detector Dogs (NDDs) used in this case, including information regarding: (a) the qualifications of the NDDs and their handlers, (b) the training and experience of the NDDs and their handlers, (c) the government's procedures regarding the treatment, training and rewarding of the NDDs, (d) a detailed description of the exact method the NDDs in this case used to indicate an "alert" to contraband, and (e) the location of the NDD and the vehicle when the NDD alerted, and (f) the NDD's reliability.

1          32.     <u>Residual Request</u>.  Ms. Chairez intends by this discovery motion to invoke her rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  This request specifically includes all subsections of Rule 16.

           Ms. Chairez requests that the government provide her and her attorney with the above requested material at least three weeks before trial.

## III.

## MOTION TO PRESERVE AND RE-WEIGH EVIDENCE

           Ms. Chairez requests that this Court issue an order for the U.S. Government and its agents to preserve the narcotic evidence in this case and to permit the defense attorney and his agents to re-weigh it without the packaging.  Ms. Chairez also requests the opportunity to view and photograph all physical evidence seized, including personal effects, items found in the car, and the car itself.  For the Court's convenience, a proposed order is attached at the end of these motions.

## IV.

## MOTION TO SUPPRESS STATEMENTS

**A.     Introduction.**

           The government bears the burden of demonstrating that a defendant's statement is voluntary and that <u>Miranda</u> warnings were given prior to a custodial interrogation.  <u>United States v. Harrison</u>, 34 F.3d 886, 890 (9th Cir. 1994); <u>see also</u> <u>United States v. Dickerson</u>, 530 U.S. 428, 439-41 (2000) (discussing constitutional underpinnings of <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966) and the need to safeguard "precious Fifth Amendment rights"); <u>see also</u> 18 U.S.C. § 3501.  Unless and until the government meets this high burden in this case, Mr. Jimenez's statements must be suppressed.

**B.     Local Rule Requiring Declaration Is Unconstitutional.**

           Ms. Chairez anticipates that the Court may consider denying him an evidentiary hearing on the ground that he has not filed a declaration in this case pursuant to Criminal Local Rule 47.1(g), which provides that a defendant must submit a declaration in support of his motion.  However, in this case, where it is the constitutionality of utilizing Ms. Chairez' statements against him that is at stake and a declaration would require Ms. Chairez to make even *more* statements, denying Ms. Chairez a hearing on this ground would violate his constitutional rights.

It is well-settled that "Congress may not legislatively supercede [the Supreme Court's] decisions interpreting and applying the Constitution." Dickerson v. United States, 530 U.S. 428, 437 (2000). Since Miranda rests on a constitutional foundation, id. at 438, no law or local court rule can constitutionally relieve the government of its burden to prove that Ms. Chairez voluntarily waived the Miranda protections. See id. In light of the Supreme Court's decision in Dickerson, this Court's burden-shifting local rule is unconstitutional, and therefore unenforceable.

**C.    The Government Must Demonstrate Compliance with *Miranda* in This Case.**

**1.    *Miranda* Warnings Must Precede Custodial Interrogation.**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of Ms. Chairez unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966)[2]. Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir.1990). In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively misleading. United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir. 2003). The warning must be clear and not susceptible to equivocation. Id. (vacating illegal entry conviction where defendant was advised of his administrative rights from an I-826 form and later advised of his Miranda rights). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 484 (1981). Unless and until the government shows that the agents properly administered the Miranda warnings, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Ms. Chairez' arrest. Miranda, 384 U.S. at 479.

---

[2] In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension. Id. at 2336 ("we conclude that Miranda announced a constitutional rule").

**2.    The Government Must Demonstrate That Any Alleged Waiver of Ms. Chairez' Rights Was Voluntary, Knowing, and Intelligent.**

When interrogation occurs without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived her privilege against self-incrimination and her right to retained or appointed counsel. Miranda, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. Schneckloth, 412 U.S. 218. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143 F.3d at 536. The standard of proof for a waiver of these constitutional rights is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights). Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), no law or local court rule relieves the government of its burden to prove that Ms. Chairez voluntarily waived the Miranda protections. Miranda, 384 U.S. 475.

In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary and (2) knowing and intelligent. Id. at 820. The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id. The second prong, however, requiring that the waiver be "knowing and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). This inquiry requires that the court determine whether "the requisite level of comprehension" exists before the purported waiver may be upheld. Id. Thus, "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (citing Colorado v. Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

The Ninth Circuit has explained that special considerations govern the "totality of the circumstances" inquiry when a non-native English speaker waives her Miranda rights in English. See United States v. Heredia-Fernandez, 756 F.2d 1412, 1415 (9th Cir. 1985) (finding that "language difficulties may impair the ability of a person in custody to waive [his Miranda] rights in a free and aware manner."). In United States v. Garibay, the Ninth Circuit set forth the relevant considerations: (1) whether the defendant signed a written waiver and in what language; (2) whether the defendant was advised of her rights in her native tongue; (3) whether the defendant appeared to understand her rights; (4) whether the defendant had the assistance of a translator; (4) whether the defendant's rights were *individually and repeatedly explained* to her; and (7) whether the defendant had prior experience with the criminal justice system. 143 F.3d 534, 538 (9th Cir. 1998) (emphasis added).

The government bears the burden of demonstrating a meaningful Miranda waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168 (1986). Moreover, this Court must "indulge every reasonable presumption against waiver of fundamental constitutional rights." Schell v. Witek, 218 F.3d 1017, 1024 (9th Cir. 2000) (*en banc*) (citations omitted). Unless and until the prosecution meets its burden of demonstrating through evidence that adequate Miranda warnings were given and that Ms. Chairez knowingly and intelligently waived his rights, Ms. Chairez' statements must be suppressed. Miranda, 384 U.S. at 479.

**D.   The Government Bears the Burden of Proving Ms. Chairez' Statements Were Made Voluntarily.**

A defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). This is so even when the procedural safeguards of Miranda have been satisfied. Id. The government bears the burden of proving by a preponderance of the evidence that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. Schneckloth, 412 U.S. at 226. Some factors taken into account have included the youth of the accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and

prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. Id.

A confession is deemed involuntary whether coerced by physical intimidation or psychological pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). "The test is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). See also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981). Until the government meets its burden of showing all statements of Ms. Chairez that it intends to use at trial were voluntary, his statements must be suppressed as involuntary. 18 U.S.C. § 3501(a).

### E. This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of Ms. Chairez's Statements.

This Court must make a factual determination as to whether a confession was voluntarily given prior to its admission into evidence. 18 U.S.C. § 3501(a). Where a factual determination is required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Under section 3501(b), this Court must consider "all the circumstances surrounding the giving of the confession," including:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be
>
> used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b) ("section 3501(b)").

///

Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors and other important factors bearing on voluntariness. Accordingly, Ms. Chairez requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any statements made by Ms. Chairez were voluntary.

## V.

### *APPRENDI V. NEW JERSEY* AND *BLAKELY V. WASHINGTON* REQUIRE THAT THIS COURT DISMISS THE INDICTMENT BECAUSE 21 U.S.C. §§ 952 AND 960 ARE UNCONSTITUTIONAL

Simply stated, Ms. Chairez' Apprendi and Blakely challenge to 21 U.S.C. §§ 952 and 960 is that Congress plainly intended the facts that determine the maximum sentence, drug type and quantity, to be sentencing factors, not elements. See, e.g., United States v. Sanchez, 269 F.3d 1250, 1268 (11th Cir. 2001) (en banc). Because that allocation conflicts with the requirements of the Fifth and Sixth Amendments as set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 124 S. Ct. 2531 (2004), the statutes are unconstitutional. Moreover, because courts cannot disturb Congress' choice of fact-finder, see United States v. Jackson, 390 U.S. 570, 576 (1968) (courts cannot "return to the [jury] the ultimate duty that Congress deliberately placed in other hands"), the statute cannot be saved.

In United States v. Buckland, 289 F.3d 558 (9th Cir. 2002) (en banc) (holding 21 U.S.C. § 841 constitutional), and United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002) (holding 21 U.S.C. § 960 constitutional), the Ninth Circuit Court of Appeals (the "Court") rejected this constitutional challenge by concluding that §§ 841 and 960 are sufficiently ambiguous to permit application of the doctrine of constitutional doubt.[3] See Buckland, 289 F.3d at 564-68; Mendoza-Paz, 286 F.3d at 1109-10. However, the Supreme Court's subsequent opinion in United States v. Harris, 122 S. Ct. 2406 (2002), indicates that the Court's opinions in both Buckland and Mendoza-Paz were wrongly analyzed and decided. "It is already well established that where a Supreme Court decision has effectively undermined prior Ninth Circuit precedent, [this Court is] free to reexamine those earlier cases to determine their continuing validity." United States v. Maybusher, 735 F.2d 366, 371 n. 1 (9th Cir. 1984) (9th Cir. 1984) (citation and quotation omitted).

---

[3] By nonetheless raising this challenge here, Ms. Chairez asks this Court to decline to follow Ninth Circuit precedent so clearly in conflict with binding precedent of the Supreme Court. Furthermore, Ms. Chairez specifically preserves this issue for future review.

To begin, the Buckland panel relied solely on its view that § 841 did not explicitly state that judges were to determine drug type and quantity by a preponderance of the evidence. See Buckland, 289 F.3d at 565 ("[s]ection 841 is most striking for what it does not say"); accord Mendoza-Paz, 286 F.3d at 1110; but see Harris, 122 S. Ct. at 2411 ("[t]he statute does not say in so many words whether brandishing is an element or a sentencing factor, but the structure of the prohibition suggests it is the latter"). Accordingly, in an effort to save the statutes, the Court felt free to backtrack on countless decisions holding that Congress clearly intended drug type and quantity to be sentencing factors decided by a trial judge. See, e.g., United States v. Lopez-Martinez, 725 F.2d 471, 475 (9th Cir. 1984) ("Under the statute, the violation is importing or possessing a controlled substance. The difference between narcotic and non-narcotic controlled substances is material only as to the applicable penalty") (emphasis added); accord United States v. Johnson, 130 F.3d 1420, 1428 (10th Cir. 1997) (affirming jury instruction that said only "controlled substance"); United States v. Lucien, 61 F.3d 366, 373 (5th Cir. 1995) ("The identity of the controlled substance as cocaine base is not an element of the offense proscribed in the first sentence of section 844(a); nor is it an element of the distribution offense denounced in section 841(a)(1)"); United States v. Williams, 876 F.2d 1521, 1251 (11th Cir. 1989) ("The nature and quantity of the controlled substance are relevant only to sentencing and do not constitute elements of a lesser included offense").

The Buckland panel found support for its view that the lack of an explicit statement as to burden of proof and allocation between judge and jury was "dispositive," id. at 565, in United States v. Brough, 243 F.3d 1078 (7th Cir. 2001), and United States v. Cernobyl, 255 F.3d 1215 (10th Cir. 2001). The panels in Brough and Cernobyl, like the Buckland panels itself, perform no statutory analysis beyond observing that § 841 does not explicitly allocate the issues of type and quantity to the judge to determine by a preponderance of the evidence.[4] See Brough, 243 F.3d at 1079; Cernobyl, 255 F.3d at 1219. Relying on these cases, the Court in Buckland concluded "the emphasis on the statutory divide between 'elements' in § 841(a) and 'penalties' in § 841(b) is . . . unavailing." 289 F.3d at 565.

///

---

[4] This approach misapplies constitutional doubt analysis, which takes place "after, and not before, [a statute's] complexities are unraveled." Almendarez-Torres v. United States, 523 U.S. 224, 238 (1998).

In Harris, the Supreme Court rejects Buckland's approach, noting, at the outset, that application of traditional canons of statutory construction to determine whether Congress intended facts to be elements or sentencing factors is the "threshold question." Harris, 122 S. Ct. at 2411. Therefore, contrary to the view expressed in Buckland that "[t]he days of semantical hair splitting between 'elements of the offense' and 'sentencing factors' . . . are over," Buckland, 289 F.3d at 566, the Supreme Court reaffirmed the viability of the statutory construction approach that it has followed since 1998. See Harris, 122 S. Ct. 2406; accord Carter v. United States, 530 U.S. 255, 273 (2000); Castillo v. United States, 530 U.S. 120, 123 (2000); Jones v. United States, 526 U.S. 227 (1999); Almendarez-Torres, 523 U.S. at 238. The type of statutory analysis undertaken in Harris, as well as in Castillo, Jones and Almendarez-Torres, makes clear that Congress intended drug type and quantity to be sentencing factors. See, e.g., United States v. Promise, 255 F.3d 150, 170-77 (4th Cir. 2001) (Luttig, J., concurring) (analyzing section 841 and collecting cases). Post-Apprendi, the Court has not performed that analysis, however, because of Buckland's erroneous view that its "day" had come and one. As the Court's pre-Apprendi precedent makes clear, that analysis compels concluding that Congress intended drug type and quantity to be sentencing factors.[5]

Perhaps most tellingly, Harris specifically rejects the notion that underlies Buckland, as well as Brough and Cernobyl, that pre-Apprendi statutory interpretation cases have been "stripped" of "precedential value" by "Apprendi's reading of the Due Process Clause." Buckland, 289 F.3d at 567; but see Sanchez, 269 F.3d at 1268 (observing that "[f]undamentally, Apprendi did not announce any new principles of statutory construction," and holding that "'Congress decided that the elements of a § 841 offense do not include the weight of the drugs'"); Buckland, 289 F.3d at 586 (Tashima, J., dissenting) (same). Harris teaches that the canon of constitutional doubt does not "embrace a dynamic view of statutory interpretation, under which the text might mean one thing when enacted yet another if the prevailing view of the Constitution changed." 122 S. Ct. at 2413. But that is precisely what Buckland, Brough and Cernobyl do: each of those decisions rejects, without explanation, the pre-Apprendi statutory interpretation of section 841. See, e.g., United States v. Nordby, 225 F.3d 1053, 1058 (9th Cir. 2000) ("existing precedent in this circuit plainly states that Congress

---

[5] In fact, in Buckland the government conceded that Congress intended drug type and quantity to be sentencing factors and that the statute was not subject to a contrary interpretation. Buckland, 289 F.3d at 564; accord id. at 586 (Tashima, J., dissenting).

1. did not intend drug quantity to be an element of the crime under 21 U.S.C. §§ 841 and 846") (citations omitted); United States v. Jackson, 207 F.3d 910, 920 (7th Cir.), vacated, 121 S. Ct. 376 (2000), judgment reinstated, 236 F.3d 886 (7th Cir. 2001) ("[i]t is apparent that Congress intended the type and quantity of the drugs distributed by a defendant convicted under section 841(a) to be determined at sentencing"); United States v. Jones, 194 F.3d 1178, 1185-86 (1999), vacated, 530 U.S. 1271 (2000), rev'd, 235 F.3d 1231, 1236 (10th Cir. 2000) ("Because Congressional intent is evident from the plain language of the statute, the doctrine of constitutional doubt, and in particular the constitutional doubt articulated in Jones, [526 U.S. 227,] does not apply"); see also United States v. Grimaldo, 214 F.3d 967, 972 (8th Cir. 2000) ("[t]he structure and plain language of [section 841] leave no doubt that drug quantity is a sentencing factor").[6] Thus, Buckland, like Brough and Cernobyl, simply adopted a new "meaning" of section 841 because "the prevailing view of the Constitution changed." Harris, 122 S. Ct. at 2413. Harris precludes this approach. Id.

In short, the approach taken in Buckland and Mendoza-Paz has been thoroughly repudiated by Harris. The Ninth Circuit must now assess the constitutionality of 21 U.S.C. §§ 841, 952, and 960 under Apprendi in light of the statutory construction set forth by the Supreme Court in Harris, Carter, Castillo, Jones and Almendarez-Torrez. As the Court's pre-Apprendi cases show, an honest assessment reveals that these statutes are facially unconstitutional.

## VI.

**IF THIS COURT UPHOLDS THE CONSTITUTIONALITY OF THE STATUTE, THE INDICTMENT MUST NEVERTHELESS BE DISMISSED BECAUSE THE GRAND JURY WAS NOT ASKED TO FIND THAT MS. CHAIREZ *KNEW* THE TYPE AND QUANTITY OF NARCOTIC THAT WAS INVOLVED IN THIS OFFENSE**

If this Court reinterprets the type and quantity of controlled substance to be offense elements or the "functional equivalent" of offense elements that have to be alleged in the indictment, this Court must find that the statute's *mens rea* is equally applicable to these new "elements." See United States v. X-Citement Video, Inc., 513 U.S. 64 (1994); but see United States v. Carranza, 289 F.3d 634 (9th Cir. 2002). Not only must the

---

[6] Although the Buckland majority insists that it was "the judiciary, not Congress, which allocated the responsibility for determining drug quantity under §841 to the courts," 289 F.3d at 567, Jackson, Jones, and Grimaldo make clear that it was Congressional intent, not judicial fiat, that dictated that allocation.

1 indictment allege the type and quantity of "controlled substance" involved in the offense, the indictment must
2 allege that the defendant knew the type and quantity involved. And, regardless of what this Court considers
3 the elements of his alleged offense, Mr. has a right to a Grand Jury determination on each one. See
4 United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999) ("The Fifth Amendment . . . requires that a
5 defendant be convicted only on charges considered and found by a grand jury."); see also id. (reversing
6 because the Ninth Circuit could "only guess whether the grand jury received evidence of, and actually passed
7 on, Du Bo's intent.") (emphasis added). Thus, assuming that this Court upholds the constitutionality of
8 section 841, the grand jury should have found that Ms. Chairez knew that approximately 50.62 kilograms of
9 marijuana were involved in this offense. Because the grand jury made no such finding, this Court should
10 dismiss the indictment.

## VII.

## THIS COURT SHOULD DISMISS THE INDICTMENT BECAUSE THE INSTRUCTIONS PROVIDED TO THE GRAND JURY CANNOT BE RECONCILED WITH THE FIFTH AMENDMENT

The Ninth Circuit has, over vigorous dissents, rejected challenges to various instructions given to grand jurors in the Southern District of California. See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005). See also United States v. Cortez-Rivera, 454 F.3d 1038 (9th Cir. 2006). Ms. Chairez respectfully disagrees with the Navarro-Vargas majority opinion, and argues that this Court should dismiss the indictment based upon structural error for the reasons set forth in Judge Hawkins' dissent in the en banc opinion, see Navarro-Vargas, 408 F.3d at 1210-11 (Hawkins, J., dissenting), and Judge Kozinski's dissent in the three judge panel decision. See United States v. Navarro-Vargas, 367 F.3d 896, 899-904 (9th Cir. 2004) (Kozinski, J., dissenting).[7]

## VIII.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defense counsel for Ms. Chairez has received only **23** pages of discovery. She believes that discovery is not yet complete. Furthermore, defense counsel has not yet had an opportunity to examine and

---

[7] When the transcripts of the instructions to the grand jury that indicted Ms. Chairez become available, she may seek to supplement this motion.

1 | re-weigh the drugs at issue in this case or to view the vehicle seized and Ms. Chairez's personal effects. Ms. Chairez respectfully requests leave to file further motions based on information obtained through the discovery process.

## IX.

## **CONCLUSION**

For the foregoing reasons, Ms. Chairez respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED: January 28, 2008                /s/ Erica K. Zunkel
                                       **ERICA K. ZUNKEL**
                                       Federal Defenders of San Diego, Inc.
                                       Attorneys for Ana Chairez