KAREN P. HEWITT
United States Attorney
RANDY K. JONES
Assistant U.S. Attorney
California State Bar No. 141711
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 557-5684
randy.jones2@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANA ISELA CHAIREZ<br><br>Defendant. | Criminal Case No. 07CR3272-JAH<br><br>DATE:  February 11, 2008<br>TIME:   8:30 a.m.<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:**<br><br>**1) PRESERVE EVIDENCE AND COMPEL PRODUCTION OF DISCOVERY;**<br>**2) SUPPRESS STATEMENTS;**<br>**3) PRESERVE AND RE-WEIGH NARCOTICS EVIDENCE;**<br>**4) DISMISS INDICTMENT BECAUSE DRUG STATUTE IS UNCONSTITUTIONAL;**<br>**5) DISMISS INDICTMENT DUE TO IMPROPER GRAND JURY INSTRUCTION;**<br>**6) GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, AND MEMORANDUM OF POINTS AND AUTHORITIES** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Randy K. Jones, Assistant United States Attorney, and hereby files its response and opposition to defendant's above-referenced motions.  Said response is

based upon the files and records of the case, together with the attached statement of facts, and memorandum of points and authorities.

## I.

## **STATEMENT OF THE CASE**

On December 4, 2007, a federal grand jury in the Southern District of California, returned a two-count Indictment against ANA ISELA CHAIREZ ("Chairez"), charging her with knowingly and intentionally importing approximately 20.80 kilograms (approximately 45.76 pounds) of marijuana, a Schedule I Controlled Substance, into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952 and 960 (Count 1); and possessing, with intent to distribute, approximately 20.80 kilograms (approximately 45.76 pounds) of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) (Count 2).

On December 6, 2007, Chairez was arraigned on the Indictment and pled not guilty. A motion hearing is scheduled for February 11, 2008 at 8:30 a.m. before this Court.

## II.

## **STATEMENT OF FACTS**

A.  PRIMARY INSPECTION

On November 8, 2007, at approximately 12:40 p.m., defendant Chairez, the driver and sole occupant of a 1995 Dodge Stratus, with Baja California, Mexico license plate BCB4774, entered into the United States from Mexico through vehicle primary lane #8 at the Calexico, California, West Port of Entry. Chairez is a United States citizen. Chairez approached Customs and Border Protection Officer (CBPO) J. Zermeno and gave a negative oral customs declaration. Upon questioning by CBPO Zermeno, Chairez stated that she was going to Calexico, California to shop, and that the car belonged to her husband. CBPO Zermeno asked Chairez for the vehicle registration. Chairez "fumbled" in the glove box and was not able to find the registration. CBPO Zermeno noticed that Chairez' hands were shaking, she appeared to be in a hurry to leave and she seemed scared. CBPO Zermeno referred Chairez to the vehicle secondary lot.

//

//

### B. SECONDARY INSPECTION

At secondary, CBPO J. Gomez requested a canine inspection of the vehicle. CBPO R. Navarro utilized his assigned human/narcotic detector dog "Carlie". Carlie alerted and responded to the passenger door area of the vehicle. CBPO Navarro informed CBPO Gomez of the alert. CBPO Gomez escorted Chairez into the vehicle secondary office for a pat down search for weapons and merchandise. The search was negative. CBPO Gomez then turned the inspection over to CBPO Van Arsdall for further inspection.

CBPO Van Arsdall received a negative oral Customs declaration from Chairez. Chairez told CBPO Van Arsdall that she was visiting her mother in Mexicali, MX and was returning home. Chairez stated that she borrowed the vehicle from a friend.

### C. DRUG SEIZURE AND CHAIREZ' ARREST

Further inspection of the vehicle revealed several packages concealed in the back seat rest, spare tire compartment, and rear passenger door. A package was probed, which produced a green leafy substance. Field-testing produced a positive indication for marijuana, a Schedule I Controlled Substance.

A total of 21 packages were discovered, with a combined weight of 20.80 kilograms (45.76 pounds). Chairez was arrested for violation of Title 21, USC §§ 952 and 960, Importation of Controlled Substances.

### D. CHAIREZ' POST-ARREST STATEMENTS

U.S. Immigration and Customs Enforcement Special Agents Thomas Behm and Doug Struckmeyer were notified and responded. Imperial County Narcotics Task Force (ICNTF) Special Agent Severro Torres was also present. Special Agent Behm attempted to check the vehicle for additional evidence but the vehicle was removed from the area prior to arrival. Special Agent Behm requested that the vehicle be returned so that he could inspect it for evidence. CBP Officers agreed to retrieve the vehicle, but never did.

At approximately 4:25 p.m., Special Agent Behm advised Chairez of her <u>Miranda</u> rights, in English, as witnessed by Special Agent Struckmeyer. Chairez acknowledged her rights and agreed to answer questions. Chairez initially made the following statement:

> That she knew there was marijuana in the vehicle. That her husband bought the vehicle for her a week ago. That she was going to El Centro and Calexico to run errands. That she did not lend the vehicle to anyone. That no one else had keys to the vehicle.

Special Agent Behm told Chairez that her story was "unbelievable". Chairez then made the following statement:

> That she was not sure what she was told was in the vehicle but she thought the vehicle contained marijuana. That she was to be paid $1,800.00 to smuggle the marijuana into the United States. That she was going to Santa Ana, California, but was to meet up with the smugglers at the Viejas Casino parking lot for further instructions. That she did not know who the vehicle belonged to. That the night before she was arrested, a man she knows as "Freddie" (not further identified), asked her to cross the contraband laden vehicle into the United States. That she agreed to do so because she needed money for her children. That "Freddie" gave her the vehicle the day of her arrest and told her to go to Viejas Casino. That "Freddie" told her he would find her there and give her further instructions and money for food and gas. That "Freddie" told her that she would be followed by a pickup truck through the Port of Entry. That this was the first time she had done this. That "Freddie" is a Caucasian or light-skinned Mexican male, approximately 25 years old, who is disabled and uses a wheelchair. That "Freddie" drives an older black Dodge Stratus that is set up for a disabled person to drive.

Special Agent Behm recovered FREDDIE's direct connect number from Chairez's phone. The interview was terminated at approximately 5:02 p.m.

E.    PRIOR VEHICLE CROSSINGS

Treasury Enforcement Communications System (TECS) lane crossing checks showed that the vehicle had two prior crossings. The crossings were at the Calexico, California Port of Entry on September 29, 2007, and July 23, 2007.

Chairez was transported to the Imperial County Jail in El Centro, California.

**III.**

**POINTS AND AUTHORITIES**

A.    MOTION TO PRESERVE EVIDENCE AND COMPEL PRODUCTION OF DISCOVERY

The Government has complied and will continue to comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that all discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below:

**(1)**    **Defendant's Statements.** The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and

1  Defendant's written statements. The Government has produced all of Defendant's statements that are
2  known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional
3  oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such
4  statements will be provided to Defendant.

5        The Government has no objection to the preservation of the handwritten notes taken by any of
6  the agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must
7  preserve their original notes of interviews of an accused or prospective government witnesses).
8  However, the Government objects to providing Defendant with a copy of the rough notes at this time.
9  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have
10 been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th
11 Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require
12 disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a
13 report). The Government is not required to produce rough notes pursuant to the Jencks Act, because
14 the notes do not constitute "statements" (as defined in 18 U.S.C. § 3500(e)) unless the notes (1)
15 comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or
16 adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough
17 notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States
18 v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks
19 Act where notes were scattered and all the information contained in the notes was available in other
20 forms). The notes are not Brady material because the notes do not present any material exculpatory
21 information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303
22 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the
23 defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3rd
24 Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If,
25 during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks
26 Act, or Brady, the notes in question will be provided to Defendant.

27     **(2) Brady Material.** The Government has and will continue to perform its duty under Brady
28 to disclose material exculpatory information or evidence favorable to Defendant when such evidence

1  is material to guilt or punishment. The Government recognizes that its obligation under Brady covers
2  not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify
3  on behalf of the United States. See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v.
4  Bagley, 473 U.S. 667, 676-77 (1985). This obligation also extends to evidence that was not requested
5  by the defense. Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).
6  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability
7  that, had the evidence been disclosed to the defense, the result of the proceeding would have been
8  different.'" Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc). The final determination
9  of materiality is based on the "suppressed evidence considered collectively, not item by item." Kyles
10 v. Whitley, 514 U.S. 419, 436-37 (1995).

11      Brady does not, however, mandate that the Government open all of its files for discovery. See
12 United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000)(per curiam). Under Brady, the
13 Government is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see
14 United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from
15 other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the
16 defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999)
17 amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S.
18 Attorney could not reasonably be imputed to have knowledge or control over. See United States v.
19 Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).

20      Brady does not require the Government "to create exculpatory evidence that does not exist,"
21 United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that the Government
22 "supply a defendant with exculpatory information of which it is aware." United States v. Flores, 540
23 F.2d 432, 438 (9th Cir. 1976).

24      **(3) Any Proposed Rule 404(b) Evidence.** The Government has already provided Defendant
25 with information regarding Defendant's known prior criminal offenses. The Government will disclose
26 in sufficient time advance of trial, the general nature of any "other bad acts" evidence that the
27 Government intends to introduce at trial pursuant to Fed. R. Evid. 404(b). To the extent possible, the
28 Government will provide the Rule 404(b) evidence to Defendant within two weeks prior to trial. The

1  Government will also provide notice of all impeachment evidence by prior criminal convictions as
2  required by Fed. R. Evid. 609.

3  **(4) Request for Preservation of Evidence.**  The Constitution requires the Government to
4  preserve evidence "that might be expected to play a significant role in the suspect's defense." California
5  v. Trombetta, 467 U.S. 479, 488 (1984).  To require preservation by the Government, such evidence
6  must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2)
7  "be of such a nature that the defendant would be unable to obtain comparable evidence by other
8  reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir.
9  2001).

10  The United States will make every effort to preserve evidence it deems to be relevant and
11  material to this case.  Any failure to gather and preserve evidence, however, would not violate due
12  process absent bad faith by the Government that results in actual prejudice to the Defendant.  See
13  Illinois v. Fisher, _ U.S._ , 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51,
14  57-58 (1988); United States v. RIVERA-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d
15  1031, 1037-38 (9th Cir. 2000).

16  **(5) Tangible Objects.**  As previously discussed, the Government has complied and will
17  continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice,
18  to examine, inspect, and copy all tangible objects that is within its possession, custody, or control, and
19  that is either material to the preparation of Defendant's defense, or is intended for use by the
20  Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.
21  The Government need not, however, produce rebuttal evidence in advance of trial.  United States v.
22  Givens, 767 F.2d 574, 584 (9th Cir. 1984).

23  **(6) Expert Witnesses.**  The Government will comply with Rule 16(a)(1)(G) and provide
24  Defendant with a written summary of any expert testimony that the Government intends to use under
25  Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial.  This shall
26  include the expert witnesses' qualifications, the expert witnesses opinions, and the bases and reasons
27  for those opinions.
28  //

1    **(7) Witness Addresses.** The Government will provide Defendant with the reports containing
2    the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a
3    non-capital case, however, has no right to discover the identity of prospective Government witnesses
4    prior to trial. See Weatherford v. Bursey, 429 U.S. , 545, 559 (1977); United States v. Dishner, 974 F.2d
5    1502, 1522 (9th Cir 1992), citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985); United
6    States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the
7    Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-
8    chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d
9    870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

10   The Government objects to any request that the Government provide a list of every witness to
11   the crimes charged who will not be called as a Government witness. "There is no statutory basis for
12   granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)©."
13   United States v. Yung, 97 F. Supp. 2d 24, 36 (D. D.C. 2000), quoting United States v. Boffa, 513 F.
14   Supp. 444, 502 (D. Del. 1980).

15   **(8) Jencks Act Material.** The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government
16   witness has testified on direct examination, the Government must give the Defendant any "statement"
17   (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to
18   the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks
19   Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him,
20   (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement,
21   or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). While the Government is
22   only required to produce all Jencks Act material after the witness testifies, the Government plans to
23   provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

24   **(9) Informants and Cooperating Witnesses.** At this time, the Government is not aware of any
25   confidential informants or cooperating witnesses involved in this case. The Government must generally
26   disclose the identity of informants where (1) the informant is a material witness, or (2) the informant's
27   testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a
28   confidential informant involved in this case, the Court may, in some circumstances, be required to

1  conduct an in-chambers inspection to determine whether disclosure of the informant's identity is
2  required under Roviaro.  See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997).
3  If the Government determines that there is a confidential informant somehow involved in this case, the
4  Government will either disclose the identity of the informant or submit the informant's identity to the
5  Court for an in-chambers inspection.  The Government recognizes its obligation under Brady and Giglio
6  to provide material evidence that could be used to impeach Government witnesses.

7      **(10) Residual Request.**  The Government will comply with all of its discovery obligations, but
8  objects to the broad and unspecified nature of Defendant's residual discovery request.

9      B.    MOTION TO SUPPRESS STATEMENTS

10      The evidence will show that at the time of her arrest, Chairez was advised of her Miranda rights,
11  acknowledged and waived those rights, and agreed to make a statement.  The evidence will further show
12  that during the interview of Chairez, the agents made no threats or promises to induce Chairez to waive
13  her rights and speak to the agents.  The evidence will show that the waiver was knowing and voluntary,
14  and the statements made by Chairez were freely and voluntarily made.

15      C.    MOTION TO PRESERVE AND RE-WEIGH NARCOTICS EVIDENCE SHOULD BE DENIED
16
17      The government does not object to the preservation and re-weigh of the marijuana seized in this case.
18
19      D.    MOTION TO DISMISS INDICTMENT BECAUSE DRUG STATUTE IS UNCONSTITUTIONAL SHOULD BE DENIED

20      Chairez claims that 21 U.S.C. Sections 952 and 960 are unconstitutional after Apprendi.  This
21  claim has been rejected by this Court.  The Ninth Circuit has squarely and repeatedly rejected the claim
22  that Apprendi renders the federal drug laws, including 21U.S.C. §§ 841, 952 and 960, facially
23  unconstitutional.  See e.g., United States v. Jimenez , 300 F.3d 1166 (9th Cir. 2002); United States v.
24  Marcucci, 299 F.3d 1156 (9th Cir. 2002); United States v. Carranza, 289 F.3d 634, 643 (9th Cir. 2002);
25  United States v. Buckland, 289 F.3d 558, 562 (9th Cir. 2002) (en banc); United States v. Mendoza-Paz,
26  286 F.3d 1104, 1109-10 (9th Cir. 2002); United States v. Varela-Rivera, 279 F.3d 1174, 1175 n.1 (9th
27  Cir. 2002) (recognizing that Buckland foreclosed the argument that 21 U.S.C. §§ 841, 952 and 960 are
28  unconstitutional); United States v. Hernandez, 322 F.3d 592, 609 (9th Cir. 2003).

1 Sections 952 and 960 do not specify who shall determine drug type and amount, or what burden of proof is required. As a result, two constructions of these statutes are possible; one which construes drug type and amount as determinations to be made by the sentencing judge by a preponderance of the evidence (a construction that poses constitutional problems under Apprendi), and an alternative construction under which drug type and amount are findings to be made by the jury beyond a reasonable doubt (a constitutionally valid construction).

Faced with these two competing interpretations, and in the absence of clear congressional intent, the Ninth Circuit employed the constitutional avoidance doctrine. Under that doctrine, every reasonable construction must be indulged in order to save a statute from unconstitutionality. Buckland, 289 F.3d at 564. Thus, where an otherwise acceptable construction of a statute would raise "serious constitutional problems," and where an alternative interpretation of the statute is "fairly possible," courts are obligated to construe the statute to avoid such problems. Id. Because it is "fairly possible" to interpret drug type and quantity as determinations required to be made by the jury, and because that interpretation is constitutionally valid, the Ninth Circuit has interpreted 21 U.S.C. § 841 (as well as its "structurally identical" counterpart, 21 U.S.C. § 960) as requiring the jury to determine drug type and quantity beyond a reasonable doubt. Buckland, 289 F.3d 567-68; Mendoza-Paz, 286 F.3d at 1110.

Chairez argues that Buckland is "wrongly decided" and facially unconstitutional. However, this Court is bound by prior precedent. Buckland overruled the Ninth Circuit's prior opinion in United States v. Nordby, 225 F.3d 1053, 1059 (9th Cir. 2000), which had held that Congress "clearly intended drug quantity to be a sentencing factor, not an element of the crime under Section 841." Id. at 568. Buckland rejected Nordby's use of the "sentencing factor" label as a basis for concluding that Congress committed quantity to the sentencing judge for a finding by a preponderance of the evidence, holding that "[t]o the extent that Nordby is inconsistent with this opinion, it is overruled." Id.

//
//
//
//
//

Buckland relied on the Seventh Circuit's opinion in United States v. Brough, 243 F.3d 1078, 1079 (7th Cir.), cert. denied, 122 S. Ct. 203 (2001), as follows:

> [T]he statute does not say who makes the findings or which party bears what burden of persuasion. Instead, the law attaches effects to facts, leaving it to the judiciary to sort our who determines the facts, under what burden. It makes no constitutional difference whether a single subsection covers both elements and penalties, whether they are divided across multiple subsections (as Section 841 does), or whether they are scattered across multiple statutes (see 18 U.S.C . Section 924(a), 1963).

Buckland, 289 F.3d at 562 (quoting Brough).

As the Buckland Court found, Congress's intent was "to ramp up the punishment for controlled substance offenders based on the type and amount of illegal substance involved in the crime." Buckland, 279 F.3d at 568. These are substantive statutes, and as Buckland indicates, it is a "through the looking-glass" exercise to suggest that their language suggests anything whatsoever about Congress's intent with regard to procedural questions of who decides particular facts. Id. at 567. If Congress had any intent whatever about whether the jury or the judge should decide facts that increase the maximum penalty, it simply intended for the facts to be found by whatever method would comport with due process and allow these increased penalties to be imposed. Thus, Congress's intent has remained the same, even though Apprendi changed the procedural rules for due process. The drug importation statutes are constitutional.

### E. MOTION TO DISMISS INDICTMENT BECAUSE GRAND JURY NOT ASKED TO FIND DEFENDANT KNEW THE TYPE AND QUANTITY OF THE MARIJUANA SHOULD BE DENIED

Chairez argues that if the court follows Buckland and finds the drug statutes to be constitutional, then it must also find that drug type and amount are elements of the offense. This means, she claims, that the Government must plead and prove that she had actual knowledge of the type and quantity of drugs she was importing. This argument is meritless.

This precise claim has been decided by this Court in United States v. Carranza, 289 F.3d 634, 644 (9th Cir. 2002). The Ninth Circuit held that "Apprendi did not change the long established rule that the government need not prove that the defendant knew the type and amount of a controlled substance he imported or possessed." Id. Rather, the Carranza Court held that "the government need only show

1  that the defendant knew that he imported or possessed some controlled substance." Id. Similarly, the
2  Government is not required to prove that Chairez knew of the specific type and amount of drug she was
3  importing, but only that she was importing some controlled substance. In light of this binding
4  precedent,
5  Chairez' claim is without merit.

      F.      MOTION TO DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY SHOULD BE DENIED

8  Chairez argues that the Indictment should have been dismissed because the instructions given
9  the grand jury panel were invalid. Chairez acknowledges that this issue was resolved in the Ninth
10 Circuit's prior precedent.
11 The Ninth Circuit's decisions in United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), and
12 United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 736 (2005),
13 reject her arguments and are dispositive. As this Court is aware, Navarro-Vargas served as the
14 culmination of four years of litigation regarding the model grand jury instructions in the Southern
15 District of California. After several panel opinions, the Ninth Circuit met en banc to settle the issue.
16 As part of its opinion, the Navarro-Vargas en banc panel listed all of the allegedly improper portions
17 of the grand jury instruction, including the punishment provision to which Chairez objects here. See
18 Navarro-Vargas, 408 F.3d at 1187. The parties briefed the issue thoroughly, and this Court necessarily
19 rejected all challenges when it concluded "we hold that the provisions of the model grand jury
20 instructions challenged here are constitutional." Id. at 1208. Moreover, the dissent spoke specifically
21 of the penalty provision in its disagreement with the majority decision, confirming that this issue was
22 in fact covered by the en banc panel. See id. at 1214.[1/]

      G.      LEAVE TO FILE FURTHER MOTIONS

24 The United States does not oppose Defendant's request to file further motions if they are based
25 on new discovery or other information not available to Defendant at the time of this motion hearing.
26 //

---

[1/] Chairez appears to recognize this, because her argument relies upon the dissenting opinion in Navarro-Vargas.

**IV.**

**CONCLUSION**

For the foregoing reasons, Defendant's motions should be denied.

DATED: February 4, 2008

                                      Respectfully Submitted,

                                      KAREN P. HEWITT
                                      United States Attorney

                                      s/ Randy K. Jones
                                      RANDY K. JONES
                                      Assistant United States Attorney
                                      Attorneys for Plaintiff
                                      United States of America
                                      Email: randy.jones2@usdoj.gov

|   |   |
|---|---|
| 1 | |
| 2 | |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 07CR3272-JAH |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CERTIFICATE OF SERVICE |
| ANA ISELA CHAIREZ | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

IT IS HEREBY CERTIFIED THAT:

I, RANDY K. JONES, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Erica K. Zunkel     (Email: erica_zunkel@fd.org)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 4, 2008

                                                s/Randy K. Jones
                                                RANDY K. JONES